UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>    and<br><br>DAVID HADDOX, KOURTNEY<br>VALENTINE, DIANE WEBSTER<br>-RANGEL, HERMAN HOGE, POLLY<br>KOESTERS, VICKIE WILSON<br>and MICHELLE BAUER,<br>    Intervening Plaintiffs,<br><br>    v.<br><br>AUTUMN RIDGE CONDOMINIUM<br>ASSOCIATION, INC., *et al.*,<br>    Defendants. | CAUSE NO.: 2:08-CV-208-PPS-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Compel Defendants to Produce Discovery Relating to Financial Status and Net Worth [DE 48], filed by Plaintiff, the United States of America, on August 26, 2009.

On July 14, 2008, the United States filed a Complaint alleging that the Defendants violated Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("the Fair Housing Act"), 42 U.S.C. §§ 3601-3619, by discriminating against persons in the purchase of a dwelling on the bases of race, color, and familial status. The United States brought the suit on behalf of David Haddox, Kourtney Valentine, Diane Webster-Rangel, Herman Hoge, and Polly Koesters pursuant to §§ 812(o) and 814(a)-(c) of the Fair Housing Act, 42 U.S.C. §§ 3612(o), 3614(a)-(c). On September 25, 2008, the Court issued an Order granting a Motion to Intervene, filed by David Haddox, Kourtney Valentine, Diane Webster-Rangel, Herman Hoge, Polly Koesters, Vicki Wilson, and Michelle Bauer, permitting them to intervene as party-plaintiffs in this suit.

In the Complaint, the United States alleges that the Defendants engaged in a pattern and practice of discrimination or denial of rights to a group of persons that raises an issue of general public importance, in violation of 42 U.S.C. § 3614. In particular, the Complaint alleges that the Defendants refused to approve Kourtney Valentine and David Haddox for residency at the Autumn Ridge condominium complex because of their race, color, and familial status, as Defendants allegedly kept a written policy prohibiting minor children from residing at Autumn Ridge in effect until 2007, despite being aware that the Fair Housing Act prohibits such discrimination. Further, the Defendants allegedly represented to real estate agents that the fact that Ms. Valentine had children would not prevent her and Mr. Haddox from gaining Board approval, but changed their minds when they learned that Mr. Haddox and Ms. Valentine were African-American. Accordingly, the United States seeks relief, in part, in the form of monetary damages pursuant to 42 U.S.C. §§ 3612(o)(3), 3613(c)(1), and 3614(d)(1)(B) and civil penalties pursuant to 42 U.S.C. § 3614(d)(1)(C) and 28 C.F.R. § 85.3(b)(3).

On December 8, 2008, the United States served its First Set of Requests for Production to All Defendants and First Set of Interrogatories to Defendant Autumn Ridge Condominium Association, Inc. ("Autumn Ridge"). Request for Production No. 8 requests:

> All documents relating to your current financial status and net worth, including, but not limited to: a statement of assets and liabilities prepared within the past three years; applications for loans during the past three years; a list of all real properties owned with their current values; mortgages and other debt instruments; annual accounting reports; bank, stock, bond, or mutual fund statements; and the three most recent federal tax returns and the three most recent state tax returns you filed in each of the following categories: individual, business, and partnership.

Mot. to Compel, Ex. A at 7-8. Interrogatory No. 18 requests that Defendant Autumn Ridge:

> Provide a complete description of Defendant Autumn Ridge Condominium Association's financial status and net worth, including: Defendant's income, real estate, corporate, and partnership holdings; assets and liabilities. Defendant should include a list of all: real property holdings, indicating each property's current value individually; and a list of all bank accounts, stocks, mutual funds, bonds, or other investments or monetary assets, along with a statement of the current value of each listed item.

*Id.*, Ex. B at 11.

On February 12, 2009, Defendants provided their responses to the discovery requests, objecting to the requested information. On February 19, 2009, and April 10, 2009, the United States served Defendant Autumn Ridge with a notice of deposition, requesting, in part, that Defendant Autumn Ridge produce a representative to testify regarding its current financial status and net worth. On April 28, 2009, counsel for Defendants wrote to counsel for the United States, requesting that the United States withdraw the discovery requests directed to the individual Defendants in exchange for their agreement to produce financial information for Defendant Autumn Ridge. The United States did not agree. Defendants ultimately agreed to provide financial data in the form of profit and loss statements for Defendant Autumn Ridge from January 1, 2006, through April 29, 2009. The Defendants did not produce the other requested financial information.

On August 6, 2009, the United States conducted the deposition of Scott Crawford, the owner of Rencon, which is Defendant Autumn Ridge's property manager. Rencon collects assessments and other income which Defendant Autumn Ridge derives, pays its bills, and performs related property management services. Rencon also handles all of Defendant Autumn Ridge's banking. Mr. Crawford testified that he prepared the profit and loss statements that Defendant Autumn Ridge produced. Further, Mr. Crawford testified that the profit and loss statements did not list as an asset a vacant lot that Autumn Ridge owned, and did not include non-cash assets. Rather, the profit and loss statements and balance sheets only contained cash assets. Mr. Crawford testified that Defendant Autumn Ridge did not have any other assets besides cash assets, although at one point it did own the property that the condominium was on, and the condominium building itself. He could not identify whether there was an existing document that reflected the value of the land or the building.

*Id.*, Ex. B at 11.

On February 12, 2009, Defendants provided their responses to the discovery requests, objecting to the requested information. On February 19, 2009, and April 10, 2009, the United States served Defendant Autumn Ridge with a notice of deposition, requesting, in part, that Defendant Autumn Ridge produce a representative to testify regarding its current financial status and net worth. On April 28, 2009, counsel for Defendants wrote to counsel for the United States, requesting that the United States withdraw the discovery requests directed to the individual Defendants in exchange for their agreement to produce financial information for Defendant Autumn Ridge. The United States did not agree. Defendants ultimately agreed to provide financial data in the form of profit and loss statements for Defendant Autumn Ridge from January 1, 2006, through April 29, 2009. The Defendants did not produce the other requested financial information.

On August 6, 2009, the United States conducted the deposition of Scott Crawford, the owner of Rencon, which is Defendant Autumn Ridge's property manager. Rencon collects assessments and other income which Defendant Autumn Ridge derives, pays its bills, and performs related property management services. Rencon also handles all of Defendant Autumn Ridge's banking. Mr. Crawford testified that he prepared the profit and loss statements that Defendant Autumn Ridge produced. Further, Mr. Crawford testified that the profit and loss statements did not list as an asset a vacant lot that Autumn Ridge owned, and did not include non-cash assets. Rather, the profit and loss statements and balance sheets only contained cash assets. Mr. Crawford testified that Defendant Autumn Ridge did not have any other assets besides cash assets, although at one point it did own the property that the condominium was on, and the condominium building itself. He could not identify whether there was an existing document that reflected the value of the land or the building.

On August 25, 2009, counsel for the United States and counsel for the Defendants conferred regarding the disputed discovery requests, but were unable to reach an agreement. On August 26, 2009, the United States filed the instant Motion. The Defendants filed a response brief on September 14, 2009, to which the United States filed a reply brief on September 24, 2009. On September 17, 2009, District Court Judge Philip P. Simon issued an Order referring this matter to Magistrate Judge Paul R. Cherry to conduct such proceedings as are required pursuant to 28 U.S.C. § 636 (b)(1)(A), Fed. R. Civ. P. 72(a), and Local Rule 72.1(c), including the scheduling and resolution of non-dispositive pre-trial matters and to conduct hearings, including evidentiary hearings, and submit proposed findings of fact.

**ANALYSIS**

As a preliminary matter, Defendants contend in their response brief that the United States failed to include a prayer for punitive damages in its Complaint. The United States argues that its request for "monetary damages" is sufficient to include a request for punitive damages.

In its Complaint, the United States requests that the Court award "monetary damages, pursuant to 42 U.S.C. §§ 3612(o)(3), 3613(c)(1), and 3614(d)(1)(B) to all persons harmed by the Defendants' discriminatory practices . . . ." Compl. at 10. Title 42 U.S.C. § 3613(c)(1) provides that "if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages . . . ." 42 U.S.C. § 3613(c)(1). Further, the term "monetary damages" in relation to 42 U.S.C. § 3614(d)(1)(B) "anticipates the inclusion of all damages which could be awarded in the form of monetary damages . . . includ[ing] actual damages . . . and punitive damages." *U.S. v. Rent America, Corp.*, 734 F. Supp. 474, 482 (S.D. Fla. 1990). Additionally, 42 U.S.C. § 3614(d)(1)(B) provides that a court may award "such other relief as the court deems appropriate, including monetary damages to the persons aggrieved" in a pattern or practice

4

discriminatory housing practice suit, which has been interpreted as permitting the award of punitive damages. *Id.*

Further, a plaintiff may recover punitive damages, even where it fails to specifically request the damages, if sufficient facts supporting such an award are alleged in the complaint. *Newell v. Wisconsin Teamsters Joint Council No. 39*, No. 05-C-552, 2007 WL 2874938, at *4 (E.D. Wis. Sept. 28, 2007). In housing discrimination cases, a plaintiff may recover punitive damages "when the defendant recklessly or callously disregards his rights or intentionally violates federal law." *Washington v. Krahn*, 467 F. Supp. 2d 899, 905 (E.D. Wis. 2006) (citing *U.S. v. Balistrieri*, 981 F.2d 916, 936 (7th Cir. 1992)). Here, the United States' Complaint alleges that Defendants acted intentionally, willfully, and in disregard for the rights of others, by maintaining a policy prohibiting minor children, and preventing Intervener-Plaintiffs Valentine and Haddox from gaining Board approval after finding out they were African-American, all in violation of the Fair Housing Act. *See* Compl. at ¶ 35. The Court finds that the facts alleged in the Complaint may support an award of punitive damages. Further, by requesting "monetary damages" pursuant to 42 U.S.C. §§ 3613(c)(1) and 3614(d)(1)(B), which both permit the award of punitive damages, the United States properly requested punitive damages. Accordingly, the Court finds that the United States' Complaint requests relief in the form of punitive damages.

Having found that the United States has requested punitive damages, the Court must decide whether it is entitled to the information requested in Interrogatory No. 18 and Request for Production No. 8. The Court evaluates each request in turn.

*1. The United States' request to compel production pursuant to Interrogatory No. 18*

Under Federal Rule of Civil Procedure 26(b)(1), a party may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. *See* Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears to be reasonably

calculated to lead to the discovery of admissible evidence." *Whitlow v. Martin*, No. 04-CV-3211, 2009 WL 2241152, at *2 (C.D. Ill. July 22, 2009). Under Rule 33, parties may serve interrogatories inquiring into any matter that is within the scope of Rule 26(b). "A party may seek an order compelling disclosure when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses." *Id*.

Here, Interrogatory No. 18 requests that Defendant Autumn Ridge provide information regarding its financial status and net worth. In support of its Motion to Compel, the United States argues that it is entitled to the requested information because such information is relevant to punitive damages, civil penalties, and possible settlement of this case. In response to the Motion to Compel, Defendant Autumn Ridge fails to address whether the requested information is relevant to the request for civil penalties, possible settlement, and fails to address objections[1] that it originally raised in response to the Interrogatories. "An underdeveloped argument, or argument not raised at all, is a waived argument." *Beverly v. Depuy Orthopaedics, Inc.*, No. 3:07-CV-137-AS, 2008 WL 45357, at *2 (N.D. Ind. Jan. 2, 2008). Accordingly, the Court will address the arguments raised in response to the Motion to Compel.

The burden "rests upon the objecting party to show why a particular discovery request is improper." *McGrath v. Everest Nat. Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008). Defendant Autumn Ridge must show with specificity that the request is improper. *Graham v. Casey's General Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002). Defendant Autumn Ridge argues that it has adequately answered the United States' discovery requests as Autumn Ridge does not own any real estate. In

---

[1] In its response to Interrogatory No. 18, Defendant Autumn Ridge objected on the grounds that the United States did not seek punitive damages, the financial data is highly confidential, the United States failed to show that its punitive damages claim is not spurious, the interrogatory is overly broad, unduly burdensome, and seeks irrelevant information. However, in response to the instant Motion regarding Interrogatory No. 8, Defendant Autumn Ridge did not address its objection that the information is highly confidential or that the information is overly broad and unduly burdensome.

6

particular, Defendant Autumn Ridge argues that Mr. Crawford mistakenly testified that Autumn Ridge owns the condominium building and land, when, instead, the real estate is owned in undivided parts on a percentage basis by the individual unit owners who are non-parties to this case. However, Mr. Crawford did not testify that Defendant Autumn Ridge currently owns the property and condominium building, but instead testified that Defendant Autumn Ridge at one point owned the property.

Nonetheless, whether or not Defendant Autumn Ridge at one time owned the condominium building and the property that it sits on, Mr. Crawford's testimony indicates that only cash assets were included in profit and loss statements and balance sheets. Mr. Crawford testified at his deposition that he did not include the vacant lot that Defendant Autumn Ridge owned and the value of the lot is not included in those documents. Accordingly, his testimony indicates that the information provided in the profit and loss statements may be incomplete and the proper remedy for the disclosure of incomplete answers is an order compelling discovery. *Humphrey v. Burgos*, No. 2:06 cv 45, 2007 WL 1341045, at *2 (N.D. Ind. May 3, 2007).

*2. The United States' request to compel pursuant to Request for Production No. 8*

The United States requests that the individual Defendants produce information regarding their financial status and net worth over the last three years. The individual Defendants object on the grounds that Request for Production No. 8 is not reasonably calculated to lead to the discovery of admissible evidence because the individual Defendants may be fully indemnified, the requested information is overly broad as only the Defendants' current assets and liabilities are relevant, and the Court should delay discovery on this matter until Plaintiffs establish that they are entitled to punitive damages or after summary judgment.

"A defendant's financial condition is relevant to the pursuit of punitive damages." *Platcher v. Health Professionals, Ltd.*, No. 04-1442, 2007 WL 2772855, at *2 (C.D. Ill. Sept. 18, 2007) (finding

7

that the individual defendants' financial condition is discoverable in relation to a punitive damages claim against them); *see also El-Bakly v. Autozone, Inc.*, No. 04 C 2767, 2008 WL 1774962, at *5 (N.D. Ill. April 16, 2008) (finding evidence of financial status relevant to the award of punitive damages); *Southern California Housing Rights Ctr. v. Krug*, No. CV06-1420SJOJCX, 2006 WL 4122148, at *2 (C.D. Cal. Sept. 5, 2006) (finding that the individual defendants' net worth and financial condition, in a case alleging violations of the Fair Housing Act, were relevant to establish the appropriate amount of punitive damages); *Equal Employment Opportunity Comm'n v. Staffing Network LLC*, No. 02 C 1591, 2002 WL 31473840, at *4 (N.D. Ill. Nov. 4, 2002) (finding that the defendant's financial information may be relevant to the issue of punitive damages). Nonetheless, the individual Defendants argue that because they may be fully indemnified, evidence of their financial status is inadmissible. As already noted, under Rule 26, "[r]elevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence." *Whitlow*, 2009 WL 2241152, at *2.

> Defendant Autumn Ridge's Articles of Incorporation provide, in part, that:
>
> Every director and every officer of the Association shall be indemnified by the Association against all expenses and liabilities . . . in connection with any proceeding to which he may be the party, or in which he may become involved, by reason of his being or having been a director or officer of the Association, or any settlement thereof, whether or not he is a director or officer at the time such expenses are incurred, *except in such cases wherein the director or officers are adjudged guilty or* (sic) *willful misfeasance or malfeasance in the performance of his duty* . . . .

Defs.' Resp. Br., Ex. 4 at Art IX, § 4 (emphasis added). Here, the United States alleges that the Defendants acted intentionally, willfully, and in disregard for the rights of others. A plaintiff may recover punitive damages "when the defendant recklessly or callously disregards his rights or intentionally violates federal law." *Washington*, 467 F. Supp. 2d at 905. The United States' allegations in support of punitive damages in its Complaint also encompass conduct that could constitute willful

misfeasance or malfeasance.  Therefore, if the conduct alleged in the Complaint supports an award of punitive damages, then by the terms of the Articles of Incorporation, the individual Defendants would not be entitled to indemnification.  Accordingly, the individual Defendants' financial status remains relevant to the issue of punitive damages.

Further, to the extent that the Defendants argue that discovery should be delayed until the United States can establish that it is likely to obtain punitive damages or until it is certain that its claims can proceed beyond summary judgment, most courts "do not require a prima facie showing of merit on a claim for punitive damages before permitting discovery of a defendant's financial net worth." *Platcher*, 2007 WL 2772855, at *3; *see also E.E.O.C. v. Env't & Demolition Servs., Inc.*, 246 F.R.D. 247, 249-50 (D. Md. 2007) (noting that "a majority of courts hold that pretrial discovery of financial statements relevant to a punitive damages claim is generally permissible without any prima facie showing of entitlement to such damages").  Accordingly, the Court need not delay discovery on the Defendants' financial status until the United States establishes a prima facie showing of entitlement to punitive damages or until it survives summary judgment.  *Id.*

Nonetheless, the Defendants are correct in asserting that only their current financial status is relevant to the issue of punitive damages.  "Only Defendants' *current* assets and liabilities are relevant to the punitive damages claims against them . . . ." *Platcher*, 2007 WL 2772855 at *3 (emphasis in original).  Here, Request for Production No. 8 requests all documents relating to the individual Defendants' current financial status and net worth.  This Request includes a request for a statement of assets and liabilities prepared within the last three years, applications for loans during the last three years, a list of real properties along with their current values, mortgages and other debt instruments, annual accounting reports, bank, stock, bond, or mutual fund statements, federal and state tax returns from the last three years, including those filed for individual, business, and partnership.  Defendants

9

argue that the requested statements of assets and liabilities, applications for loans, and tax returns, all for the past three years, exceed what is necessary to establish the Defendants' current net worth and the Court should require the United States to narrow its request to documents necessary to establish the Defendants' current assets and liabilities. The United States argues that information for the requested time period is necessary for the United States to determine whether the Defendants' financial positions changed once they were informed that the Government was conducting an investigation or after the United States filed the instant suit. At least one other district court in this Circuit has concluded that a request for financial records over the past three years is overly broad. *See Platcher*, 2007 WL 2772855 at *3 (finding that the request for financial records over the past three years far exceeded what is necessary to establish the defendants' current assets and liabilities). Other district courts addressing this issue have concluded that financial records over approximately the past two years is sufficient to establish a defendant's current net worth. *See E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 395 (E.D. Cal. 2009) (permitting disclosure of financial statements from 2007 and 2008, and any information available through 2009); *S. California Hous. Rights Ctr.*, 2006 WL 4122148, at *2 (limiting discovery of financial documents to time period of 2004 through mid-2006); *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005) (limiting discovery of financial documents to period of 2003 through mid-2005). Accordingly, the Court will limit discovery of all the requested financial documents to a period from January 1, 2007, to the present. *See Raiser v. O'Shaughnessy*, No. 92 C 286, 1992 WL 309541, at *1 (N.D. Ill. Oct. 21, 1992) (limiting discovery of financial documents, comprised of "loan applications, credit card applications, mortgage applications, stockbrokers' reports, investment reports or other documents or financial records that list or describe assets owned" by the defendant, to "the most recent" documents that disclose the defendant's assets and

liabilities). Further, the Court will apply the same limitation to the information requested from Defendant Autumn Ridge in Interrogatory No. 18.

On April 22, 2009, the Court entered a protective Order, providing that any discovery material designated as "Confidential Material" by either party can only be disclosed to counsel of record for the parties in this action, their partners, associates, secretaries, paralegal assistants, and employees, to the extent reasonably necessary, and expert witnesses or agents retained by the parties or their counsel. Further, the Protective Order provides that "Confidential Material" refers to documents containing personal data identifiers, income tax returns, profit and loss statements, and other corporate financial records, home addresses, or other personal information. *See* Prot. Order at ¶ 1(b). Accordingly, the financial documents requested by Request for Production No. 8 will be adequately protected under the Protective Order.

Finally, the United States filed a Certification Pursuant to Fed. R. Civ. P. 37(a)(1) and Northern District of Indiana Local Rule 37.1, as required by Rule 37(a)(1) of the Federal Rules of Civil Procedure and Local Rule 37.1. Counsel for the United States represents that the parties conferred regarding the outstanding discovery on August 25, 2009, at 2:30 p.m. (eastern time), but were unable to resolve their discovery disputes.

Rule 37(a) of the Federal Rules of Civil Procedure, in part, provides:

> If the motion [to compel] is granted–or if the disclosure or requested discovery is provided after the motion was filed–the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>> (iii) other circumstances make an award of expenses unjust.

Rule 37(a)(5)(A).

Accordingly, the Court grants the United States' Motion to Compel Defendants to Produce Discovery Relating to Financial Status and Net Worth, subject to the time restrictions set forth above.

**CONCLUSION**

Having reviewed the instant Motion, the Court hereby **GRANTS** the Motion to Compel Defendants to Produce Discovery Relating to Financial Status and Net Worth [DE 48] and **ORDERS**:

(1) Defendant Autumn Ridge Condominium Association, Inc. to respond and serve upon the United States its response to the United States' Interrogatory No. 18, by **November 5, 2009**;

(2) Defendants Richard Archie, Ronald Patterson, and James Reed to respond and serve upon the United States their responses to the United States' Request for Production No. 8, to the extent that the requested documents exist, by **November 5, 2009**; and

(3) Both responses are limited to information from a period of January 1, 2007, through the present.

SO ORDERED this 5th day of October, 2009.

    s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record