**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br><br> and <br><br> DAVID HADDOX, KOURTNEY VALENTINE, DIANE WEBSTER -RANGEL, HERMAN HOGE, POLLY KOESTERS, VICKIE WILSON and MICHELLE BAUER, <br>     Intervening Plaintiffs, <br><br> v. <br><br> AUTUMN RIDGE CONDOMINIUM ASSOCIATION, INC., *et al.*, <br>     Defendants. | CAUSE NO.: 2:08-CV-208-PPS-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Motion of Intervening Plaintiffs to Compel Defendants Richard Archie, Ronald Patterson, and James Reed to Answer Interrogatories Relating to their Financial Status [DE 54], filed by the Intervening Plaintiffs on September 15, 2009.

On July 14, 2008, the United States filed a Complaint alleging that the Defendants violated Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("the Fair Housing Act"), 42 U.S.C. §§ 3601-3619, by discriminating against persons in the purchase of a dwelling on the bases of race, color, and familial status. The United States brought the suit on behalf of David Haddox, Kourtney Valentine, Diane Webster-Rangel, Herman Hoge, and Polly Koesters pursuant to §§ 812(o) and 814(a)-(c) of the Fair Housing Act, 42 U.S.C. §§ 3612(o), 3614(a)-(c). On September 25, 2008, the Court issued an Order granting a Motion to Intervene, filed by David Haddox, Kourtney Valentine, Diane Webster-Rangel, Herman Hoge, Polly Koesters, Vicki Wilson, and Michelle Bauer ("the Intervening Plaintiffs"), permitting them to intervene as party-plaintiffs in this suit.

On October 1, 2008, with leave of Court, the Intervening Plaintiffs filed a Complaint in Intervention alleging that the Defendants engaged in a pattern and practice of discrimination or denial of rights to a group of persons that raises an issue of general public importance, in violation of 42 U.S.C. § 3614. In particular, the Complaint in Intervention alleges that the Defendants refused to approve Kourtney Valentine and David Haddox for residency at the Autumn Ridge condominium complex because of their race and familial status. Further, the Defendants allegedly represented to real estate agents that the fact that Ms. Valentine had children would not prevent her and Mr. Haddox from gaining Board approval, but changed their minds when they learned that Mr. Haddox and Ms. Valentine were African-American. Accordingly, the Intervening Plaintiffs seek monetary damages, including compensatory damages, punitive damages, and attorney's fees.

On July 14, 2009, the Intervening Plaintiffs served interrogatories on Defendants Richard Archie, Ronald Patterson, and James Reed ("the individual Defendants") requesting detailed financial information. In particular, the following interrogatories were served on the individual Defendants:

**Interrogatory Number 1**: What is your monthly net wage or salary (or a retirement income, if applicable) after deductions or withholding made for income tax, social security, medical insurance, pensions, and other like deductions or withholdings?

**Interrogatory Number 2**: State whether you own or have interests in tangible or intangible personal property. If so, state the current market values of the assets and the annual income derived from these assets in each of the last 3 years.[1]

**Interrogatory Number 3**: Do you own any real property (individually or jointly with others) or do you have any proprietary or possessory interests in any real property? If so, state:

    a) the identity, location, and nature of each tract or property owned by you or in which you have proprietary or possessory interests;
    b) the present fair market value of each property;
    c) the amount of annual income realized from the property or from the

---

[1] The interrogatory then requests information regarding various types of financial records.

proprietary or possessory interests in the property for the last 3 years.

Mot. to Compel, Ex. A. The individual Defendants served their responses on the Intervening Plaintiffs on August 24, 2009, with objections.

Counsel for the Intervening Plaintiffs and counsel for the individual Defendants conferred on August 25, 2009, regarding the discovery dispute and were unable to reach an agreement. On September 15, 2009, the Intervening Plaintiffs filed the instant Motion. The individual Defendants filed their response brief in opposition on September 30, 2009, and the Intervening Plaintiffs did not file a reply brief. With leave of Court, the individual Defendants filed a Supplemental Response brief on October 22, 2009.

On September 17, 2009, District Court Judge Philip P. Simon issued an Order referring this matter to Magistrate Judge Paul R. Cherry to conduct such proceedings as are required pursuant to 28 U.S.C. § 636 (b)(1)(A), Fed. R. Civ. P. 72(a), and Local Rule 72.1(c), including the scheduling and resolution of non-dispositive pre-trial matters and to conduct hearings, including evidentiary hearings, and submit proposed findings of fact.

**ANALYSIS**

Under Federal Rule of Civil Procedure 26(b)(1), a party may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. *See* Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence." *Whitlow v. Martin*, No. 04-CV-3211, 2009 WL 2241152, at *2 (C.D. Ill. July 22, 2009). Under Rule 33, parties may serve interrogatories inquiring into any matter that is within the scope of Rule 26(b). "A party may seek an order compelling disclosure when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses." *Id*.

Here, the Intervening Plaintiffs' Interrogatories to the individual Defendants request that the individual Defendants provide information regarding their financial status and net worth. In response to the Motion to Compel, the individual Defendants fail to address objections[2] that they originally raised in response to the Interrogatories. "An underdeveloped argument, or argument not raised at all, is a waived argument." *Beverly v. Depuy Orthopaedics, Inc.*, No. 3:07-CV-137-AS, 2008 WL 45357, at *2 (N.D. Ind. Jan. 2, 2008). Accordingly, the Court will address the arguments raised in response to the Motion to Compel.

The burden "rests upon the objecting party to show why a particular discovery request is improper." *McGrath v. Everest Nat. Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008). The individual Defendants must show with specificity that the request is improper. *Graham v. Casey's General Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002). "A defendant's financial condition is relevant to the pursuit of punitive damages." *Platcher v. Health Professionals, Ltd.*, No. 04-1442, 2007 WL 2772855, at *2 (C.D. Ill. Sept. 18, 2007) (finding that the individual defendants' financial condition is discoverable in relation to a punitive damages claim against them); *see also El-Bakly v. Autozone, Inc.*, No. 04 C 2767, 2008 WL 1774962, at *5 (N.D. Ill. April 16, 2008) (finding evidence of financial status

---

[2] In its response to the interrogatories, the individual Defendants each object on the grounds that the requested financial information is confidential, the Intervening Plaintiffs have not demonstrated that their claim for punitive damages is not spurious, the Intervening Plaintiffs' interest in obtaining the requested information must be balanced against the individual Defendants' right to privacy, discovery should be delayed until the Intervening Plaintiffs show that they are entitled to punitive damages, the request is overly broad, unduly burdensome, unnecessarily expensive, its probative value is slight, the information sought is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and discovery should be delayed until after summary judgment.

However, in response to the instant Motion, the individual Defendants do not address their objections that the information requested is confidential, unduly burdensome, unnecessarily expensive, and has slight probative value. Nonetheless, to the extent that the individual Defendants allege that the interrogatories are unduly burdensome and unnecessarily expensive, they must adequately describe the nature and extent of the claimed burden by specifically showing how the disclosure of the requested information would be burdensome. *Boyer v. Gildea*, No. 1:05-CV-126, 2008 WL 4911267, at *4 (N.D. Ind. Nov. 13, 2008). The individual Defendants have not done so.

relevant to the award of punitive damages); *Southern California Housing Rights Ctr. v. Krug*, No. CV06-1420SJOJCX, 2006 WL 4122148, at *2 (C.D. Cal. Sept. 5, 2006) (finding that the individual defendants' net worth and financial condition, in a case alleging violations of the Fair Housing Act, were relevant to establish the appropriate amount of punitive damages); *Equal Employment Opportunity Comm'n v. Staffing Network LLC*, No. 02 C 1591, 2002 WL 31473840, at *4 (N.D. Ill. Nov. 4, 2002) (finding that the defendant's financial information may be relevant to the issue of punitive damages). Nonetheless, the individual Defendants argue that the Intervening Plaintiffs' request related to their financial information should be denied because it is not reasonably calculated to lead to the discovery of admissible evidence. In particular, the individual Defendants argue that because they may be fully indemnified, evidence of their financial status is irrelevant. As already noted, under Rule 26, "[r]elevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence." *Whitlow*, 2009 WL 2241152, at *2.

> Defendant Autumn Ridge's Articles of Incorporation provide, in part, that:
>
> Every director and every officer of the Association shall be indemnified by the Association against all expenses and liabilities . . . in connection with any proceeding to which he may be the party, or in which he may become involved, by reason of his being or having been a director or officer of the Association, or any settlement thereof, whether or not he is a director or officer at the time such expenses are incurred, *except in such cases wherein the director or officers are adjudged guilty or* (sic) *willful misfeasance or malfeasance in the performance of his duty* . . . .

Op. and Order [DE 68], p. 8 (emphasis in original). Here, the Intervening Plaintiffs allege that the Defendants acted intentionally, willfully, and in disregard for their rights. A plaintiff may recover punitive damages "when the defendant recklessly or callously disregards his rights or intentionally violates federal law." *Washington v. Krahn*, 467 F. Supp. 2d 899, 905 (E.D. Wis. 2006). The Intervening Plaintiffs' allegations in support of punitive damages in their Complaint in Intervention also

5

encompass conduct that could constitute willful misfeasance or malfeasance. Therefore, if the conduct alleged in the Complaint in Intervention supports an award of punitive damages, then by the terms of the Articles of Incorporation, the individual Defendants would not be entitled to indemnification. Accordingly, the individual Defendants' financial status remains relevant to the issue of punitive damages.

Further, to the extent that the individual Defendants argue that discovery should be delayed until the Intervening Plaintiffs can establish that they are likely to obtain punitive damages or until it is certain that their claims can proceed beyond summary judgment, most courts "do not require a prima facie showing of merit on a claim for punitive damages before permitting discovery of a defendant's financial net worth." *Platcher*, 2007 WL 2772855, at *3; *see also E.E.O.C. v. Env't & Demolition Servs., Inc.*, 246 F.R.D. 247, 249-50 (D. Md. 2007) (noting that "a majority of courts hold that pretrial discovery of financial statements relevant to a punitive damages claim is generally permissible without any prima facie showing of entitlement to such damages"). Accordingly, the Court need not delay discovery on the individual Defendants' financial status until the Intervening Plaintiffs establish a prima facie showing of entitlement to punitive damages or until it survives summary judgment. *Id.*

Nonetheless, the individual Defendants are correct in asserting that only their current financial status is relevant to the issue of punitive damages. "Only Defendants' *current* assets and liabilities are relevant to the punitive damages claims against them . . . ." *Platcher*, 2007 WL 2772855 at *3 (emphasis in original). Here, Interrogatories 2 and 3 request information relating to the individual Defendants' assets and annual income. Interrogatory Number 2 requests information related to the individual Defendants' tangible or intangible personal property, including the current market values of the assets and annual income derived from the assets over the last three years. Interrogatory Number 3 requests information regarding real property, including annual income realized from the property or proprietary

or possessory interests in the property over the last three years. The individual Defendants argue that the requested information for the past three years exceed what is necessary to establish the individual Defendants' current net worth and the Court should require the Intervening Plaintiffs to narrow their request to documents necessary to establish the individual Defendants' current assets and liabilities. At least one other district court in this Circuit has concluded that a request for financial records over the past three years is overly broad. *See Platcher*, 2007 WL 2772855 at *3 (finding that the request for financial records over the past three years far exceeded what is necessary to establish the defendants' current assets and liabilities). Other district courts addressing this issue have concluded that financial records over approximately the past two years is sufficient to establish a defendant's current net worth. *See E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 395 (E.D. Cal. 2009) (permitting disclosure of financial statements from 2007 and 2008, and any information available through 2009); *S. California Hous. Rights Ctr.*, 2006 WL 4122148, at *2 (limiting discovery of financial documents to time period of 2004 through mid-2006); *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005) (limiting discovery of financial documents to period of 2003 through mid-2005). Accordingly, the Court will limit discovery of all the requested financial information to a period from January 1, 2007, to the present. *See Raiser v. O'Shaughnessy*, No. 92 C 286, 1992 WL 309541, at *1 (N.D. Ill. Oct. 21, 1992) (limiting discovery of financial documents, comprised of "loan applications, credit card applications, mortgage applications, stockbrokers' reports, investment reports or other documents or financial records that list or describe assets owned" by the defendant, to "the most recent" documents that disclose the defendant's assets and liabilities).

Next, the individual Defendants argue that even if the Court allows discovery related to their financial status, the Intervening Plaintiffs' interest in proving the individual Defendants' wealth must be balanced against the individual Defendants' right to privacy. Federal courts ordinarily recognize a

7

constitutionally-based right of privacy that a party can raise in response to discovery requests. *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006). The need for the information sought must be balanced against the privacy right asserted. *S. California Hous. Rights Ctr.*, 2006 WL 4122148 at *4. Here, the individual Defendants do not explain exactly which of the information requested is private, or how such information is private. Nonetheless, the Intervening Plaintiffs' need for the requested financial information outweighs the individual Defendants' claim of privacy, especially where, as here, the information being sought can be protected by a protective order. *See id.*; *Farber*, 234 F.R.D. at 191 (finding that privacy concerns related to the disclosure of requested information could be protected by a protective order). On April 22, 2009, the Court entered a Protective Order, providing that any discovery material designated as "Confidential Material" by either party can only be disclosed to counsel of record for the parties in this action, their partners, associates, secretaries, paralegal assistants, and employees, to the extent reasonably necessary, and expert witnesses or agents retained by the parties or their counsel. Further, the Protective Order provides that "Confidential Material" refers to information containing personal data identifiers, income tax returns, profit and loss statements, and other corporate financial records, medical information, home addresses, and current home or cellular telephone numbers. *See* Prot. Order at ¶ 1(b). Accordingly, the financial information requested by the Intervening Plaintiffs' Interrogatories will be adequately protected under the Protective Order.

In their supplemental response brief, the individual Defendants request that the Court declare that their compliance with the Court's October 5, 2009 Opinion and Order, requiring the individual Defendants to produce financial documents requested by the United States, shall serve as a response to the Intervening Plaintiff's Interrogatories pursuant to Rule 33(d). In particular, the individual Defendants argue that the produced documents will contain the information adequate for the Intervening Plaintiffs to accurately and thoroughly evaluate the individual Defendants' financial position.

In relevant part, Rule 33(d) provides that

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . *and if the burden of deriving or ascertaining the answer will be substantially the same for either party*, the responding party may answer by:
> (1) *specifying the records that must be reviewed*, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d)(emphasis added). To utilize this Rule, the information that the Intervening Plaintiffs are requesting must actually be obtainable from the documents. *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 325 (N.D. Ill. 2005). Further, the burden of ascertaining the information must be substantially equivalent and there must be sufficiently detailed specification of the records to permit the interrogating party to find the document containing the requested information. "These are not optional requirements." *Id.* Referring to documents in general, without specifying particular documents, is "an abuse of the option." *Id.* at 326. Here, although the individual Defendants attempt to invoke this Rule, they have not identified the documents that they will produce to the individual Defendants, and do not specify which documents will contain the requested information. As such, the Intervening Plaintiffs will not be able to determine which documents are responsive to their Interrogatories. Accordingly, the Court denies the individual Defendants' request that their compliance with the October 5, 2009 Order will constitute a response to the Interrogatories.

Finally, the Intervening Plaintiffs filed a Certification Pursuant to Fed. R. Civ. P. 37(a)(1) and Northern District of Indiana Local Rule 37.1, as required by Rule 37(a)(1) of the Federal Rules of Civil Procedure and Local Rule 37.1. Counsel for the Intervening Plaintiffs represents that the parties conferred regarding the outstanding discovery on August 25, 2009, but were unable to resolve their discovery disputes.

Rule 37(a) of the Federal Rules of Civil Procedure, in part, provides:

If the motion [to compel] is granted–or if the disclosure or requested discovery is provided after the motion was filed–the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

Rule 37(a)(5)(A).

Accordingly, the Court grants the instant Motion, subject to the time restrictions set forth above.

## CONCLUSION

Having reviewed the instant Motion, the Court hereby **GRANTS** the Motion of Intervening Plaintiffs to Compel Defendants Richard Archie, Ronald Patterson, and James Reed to Answer Interrogatories Relating to their Financial Status [DE 54] and **ORDERS** Defendants Richard Archie, Ronald Patterson, and James Reed to respond and serve upon the Intervening Plaintiffs their response to the Intervening Plaintiffs' Interrogatories to the individual Defendants, by **December 15, 2009**, but the responses are limited to information from a period of January 1, 2007, through the present.

SO ORDERED this 27th day of October, 2009.

      s/ Paul R. Cherry
      MAGISTRATE JUDGE PAUL R. CHERRY
      UNITED STATES DISTRICT COURT

cc: All counsel of record